### In re MB SQUARED, INC., a/k/a Doctorick Machine Division, Debtor.

### MB SQUARED, INC. and Marriner and Crumrine, Movants,

v.

### ENCOTECH, INC., Bernard Lalli, Rosalyn Lalli, Middle Monongahela Industrial Development Association, Inc., and Pennsylvania Industrial Development Authority, Respondents.

Bankruptcy No. 93–21258–JKF.

Motion No. GWS–17.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 17, 1994.

Gary W. Short, for movants.

Bernhard Schaffler, for respondents Encotech, Inc., Bernard Lalli and Rosalyn Lalli.

Olivia J. Lorenzo, for respondent Middle Monongahela Industrial Development Ass'n, Inc.

John G. Narkin, for respondent Pennsylvania Indus. Development Authority.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is a motion filed on behalf of Debtor for reconsideration of our order of March 24, 1994, denying confirmation of the joint plan of reorganization filed by Debtor and the law partnership of Marriner and Crumrine on feasibility grounds. Objections to the motion were filed by Encotech, Inc., Bernard Lalli, Rosalyn Lalli, the Middle Monongahela Industrial Development Association, Inc. (MIDA), and the Pennsylvania Industrial Development Au-

thority (PIDA). An evidentiary hearing on the motion for reconsideration was held on May 31 and June 1, 1994. For the reasons which follow, we will deny the motion.

Pursuant to our finding that the plan of reorganization[1] as submitted was infeasible, we appointed an examiner, Mark M. Gleason, a certified public accountant. Gleason filed 30–day and 60–day reports of his findings and recommendations. The 60–day report was filed May 25, 1994. It reflects the following:

1. Accounts receivable of $143,626 are currently uncollectible. The uncollectible amount includes a large (approximately $60,000) receivable from American Bradford Corporation (ABC), Debtor's affiliate. (We note that Debtor's financial statements do not recognize any of the receivables as uncollectible.)

2. Debtor's reported inventory balance in the amount of $84,684 was not adjusted on an on-going basis throughout the chapter 11 and should be reduced on Debtor's books to the sum of $5,000 to reflect current status. The examiner also suggested that a current physical inventory be conducted.

3. Because of the situation with the inventory, Debtor's assessment of the cost of goods sold was understated and gross profits were overstated.

4. Balance sheet asset and liability accounts on Debtor's monthly financial reports filed with the court were inconsistent with financial reports issued by Debtor's accountant. However, the examiner was able to reconcile the differences. In the examiner's opinion, Debtor requires assistance (perhaps an employee with some accounting expertise) to maintain records, prepare budgets, and do cost accounting.

5. As a result of the above, as well as Debtor's failure to account for inter-company transactions with ABC, the financial projections Debtor submitted in connection with its disclosure statement were based on improper assumptions. Assumptions need to be adjusted in the areas of sales, cost of goods sold, other expenses and asset balances.

6. Debtor is in need of a better budgeting process and job cost system to provide management with financial information, to control costs, and to assist in bidding and pricing future jobs.

7. Because Debtor's sales are concentrated among only a few large customers, Debtor must analyze and plan for the impact of a potential loss of any one of them.

8. Various types of insurance are necessary and Debtor should provide proof that such insurance is in place.[2]

9. Debtor should report and document transactions between it and related parties.

10. Monthly and year-to-date income statements should be part of the financial statements prepared by Debtor's outside accountant.

11. Depreciation expense or some similar category should be included in financial statements as a method of projecting future capital expenditures.

12. A comprehensive accounts receivable policy with respect to credit standards and terms is needed in order to facilitate prompt payment by customers.

Debtor's motion for reconsideration is based on various grounds and at the evidentiary hearing on May 31 and June 1, 1994, Debtor's principal, Martin Doctorick, testified that, in his opinion, certain receivables are collectible. Debtor also produced financial statements with adjustments. Debtor characterizes the evidence it submitted at this hearing as unchallenged. In addition, Debtor presented "new evidence" in support

---

1. The confirmation hearing concerned the Amended Plan as modified by the First Modification to Amended Plan of Reorganization. The First Modification was filed on March 9, 1994.

2. Earlier in the bankruptcy case proceedings, the question whether Debtor had workers' compensation insurance was raised. Debtor, through Doctorick, continually asserted that it did but never provided proof of insurance. When compelled to do so, it filed a binder for liability insurance with ABC as the named insured. It also filed a copy of an application for workers' compensation insurance. Application was made in Debtor's name (Doctorick Machine) and included ABC's employees. Inclusion of nondebtor personnel is improper because Debtor is paying the premium.

of its motion for reconsideration. This evidence consisted of Doctorick's agreement to reduce his annual salary from $60,000 to $42,000 which will result in a decrease in monthly expenses including salary and payroll taxes and increased monthly net income for Debtor. Debtor also proposed changes in stock ownership. In addition, Debtor cites various "equitable considerations" which are relevant to the instant matter only insofar as they evidence litigation in which Debtor is or may become involved, and the corresponding effect such litigation may have on a plan.

MIDA and PIDA object to reconsideration on the grounds that this court heard and fully considered the evidence submitted at the plan hearing conducted on March 14 and 15, 1994. These creditors also argue that postpetition accounts receivable are uncollectible and that Debtor's average net monthly income is decreasing.

Encotech, Inc., and the Lallis object to Debtor's motion on various grounds. They first challenge Debtor's assertion that Doctorick's testimony must be accepted without question because no witnesses contradicted it. Encotech and the Lallis describe Doctorick's testimony on behalf of Debtor as inconsistent and inaccurate and find significant Debtor's failure to timely file a response to the examiner's findings and recommendations in light of a court order which set a date for the filing of a written response.[3]

Insofar as it is alleged that there was no challenge to Doctorick's testimony, we note that the examiner testified that in his opinion Doctorick's assumptions and conclusions were faulty. In addition, § 1129 requires that before confirming a proposed plan of reorganization a court must find that the plan is feasible. In order to do so the court must take into consideration all the facts and circumstances of the matter before it. Our order of March 24, 1994, sets forth the reasons for denying confirmation of Debtor's plan and we incorporate that order herein. Nothing presented at the evidentiary hearing was sufficient to change those findings based upon the plan Debtor presented for confirmation. In fact, most of the testimony and evidence offered by Debtor was relevant only to modifications to the plan that Debtor would propose, but Debtor has not filed a disclosure statement or plan which incorporates the proposals. Debtor has filed a proposed modification to the plan which offers unsecured creditors the option to accept stock in lieu of cash under the plan. This modification was filed to address a concern over the current deadlock on Debtor's board due to a 50–50 stock ownership split. The modification was filed after Debtor solicited votes on the plan and after the order denying confirmation of the plan was entered. Debtor filed a certificate of service indicating service of the modification on all creditors. However, we cannot confirm a modified plan with respect to which insufficient disclosures as to the effect of the modifications have been made and as to which creditors have not been afforded an opportunity to be heard.

The examiner, appointed because we found the plan Debtor submitted to its creditors to be infeasible, made the recommendations recited above, among others. Under the current plan, the success of the production or machine end of Debtor's business depends on Doctorick who is the party with the necessary knowledge of that side of Debtor's business. After observing Doctorick throughout this case and particularly during the evidentiary hearings conducted on March 14 and 15, May 31, and June 1, we find that his strength lies in his expertise with respect to production. The examiner testified that, although Debtor's financial systems are adequate, they are not properly implemented by Doctorick or Debtor's bookkeeper, who is Doctorick's mother, and that Debtor needs an employee with an appropriate financial background. The need is further evidenced in that some of the requisite formalities of a chapter 11 case have not been properly or timely adhered to, including payment of administrative expenses, particularly taxes, and filing of obligatory reports concerning financial information with the court and the Office of the United States Trustee.

3. On May 31, 1994, the day of the hearing on this matter, Debtor filed a response to the examiner's recommendations, well past the date set by the court.

At the May 31 and June 1 hearing, Debtor submitted adjustments to its financial statements, but these adjustments were not part of the original disclosure statement and plan. In addition, according to the examiner, whose testimony we find credible, these adjustments do not appear to be realistic. The examiner testified that, as of April 30, 1994, Debtor's current assets included approximately $224,000 in accounts receivable, only $60–70,000 of which is collectible. Doctorick, on behalf of Debtor, testified that, in his opinion, all the accounts receivable are collectible. Due to the age of these receivables as indicated on the reports filed with the court, and the evidence at trial concerning Enerfab and ABC, this is not a credible assumption. With regard to one receivable of $52,000 owed by Enerfab, Doctorick testified that, in his opinion, the receivable is collectible but that it will take litigation to effect recovery. At this stage, it cannot be established that Debtor will prevail in a suit between it and Enerfab. Moreover, Debtor's evidence did not account for the cost of litigation or for any potential recovery by Enerfab on its counterclaim.[4]

Doctorick also testified that the account receivable owed by ABC, Debtor's affiliate, which Doctorick controls, could and would be paid. Despite that testimony, the size of the receivable is significant and no attempt was made by ABC to pay it in full as of the date of the hearing. Some credits were made on Debtor's books showing a reduction of the receivable but these were required because of Debtor's improper bookkeeping and its failure to account for a setoff. Furthermore, the examiner testified at the May 31st hearing that when he asked for information concerning the collectibility of the account receivable owed by ABC to Debtor, he was provided with ABC's most current records which consisted of information prepared by its CPA in November and December of 1993, as well as an aging report from March, 1994. Based on the information provided, the examiner concluded that ABC did not have the wherewithal to pay what it owes Debtor.

The examiner further testified that, during the chapter 11, Debtor's accounts payable and unpaid taxes increased. Although accounts receivable also increased, many are not collectible at present. In addition, Debtor's proposed plan contained projections regarding sales, the cost of goods sold, and other expenses which were not realistic inasmuch as various contingencies, such as maintenance, repair and replacement expenses for major assets were not included and Debtor's job costing procedure was not complete. Moreover, Debtor's business depends on just a few large customers. The loss of any one would have an impact on Debtor's operations. The ramifications of such an event have not been addressed by Debtor, although Debtor established that it is soliciting and has acquired business from new customers.

Debtor, through Doctorick, also presented testimony at the May 31st hearing with respect to a reduction in salary and concomitant payroll tax reduction, which would increase Debtor's monthly net income from $10,000 to $12,282. Debtor also proposed a plan modification which would change stock ownership. Presently, Doctorick and Bernard Lalli each hold 50 per cent of the stock. Debtor proposes reducing this amount to 40 per cent for each stockholder, the remaining twenty per cent to be available for Class 10 creditors who would have the option of receiving a distribution of stock in lieu of cash. This latter modification was filed of record on the same date Debtor filed the motion for reconsideration, which was March 31, 1994, after the plan votes were tallied and plan confirmation denied. Thus, the plan creditors voted on did not contain the stock option.

Debtor also presented testimony that it will be able to increase its cash flow by entering into a lease of some of its physical space. However, despite Debtor's assertions regarding the lease both prior to and at this

---

4. At the time of the hearing on Debtor's motion for reconsideration, Debtor had recently filed Adversary No. 94–2217 against Enerfab. Enerfab has since filed a counterclaim. Debtor seeks approximately $52,000 from Enerfab. Enerfab's counterclaim requests a judgment for $103,000 exclusive of interest, costs and fees. Prior to the hearing but postpetition, Enerfab had sued Debtor but that suit was dismissed. Enerfab had not obtained relief from the automatic stay.

hearing, no motion to approve a lease has been filed.[5]

We make no judgment at this time whether the proposed changes to the plan would render an amended plan feasible. Inasmuch as creditors have already voted on the plan at issue, which we found to be infeasible, the changes proposed by Debtor must be circulated to all creditors. In order for creditors to evaluate the effect that the changes may have on their interests, Debtor must make appropriate disclosures concerning the nature and impact of the changes and any other relevant factors. At a minimum, the disclosures must include the examiner's recommendations and the basis therefor and whether Debtor has or will implement the recommendations and its reasons therefor. In addition, creditors must be given an opportunity to re-evaluate their positions in light of the new disclosures and new plan provisions.

In conclusion, we find that the testimony and evidence presented on May 31 and June 1, 1994, were insufficient to support a reversal of our March 24, 1994, order denying confirmation of the plan. The "new evidence" presented by Debtor at the May 31 and June 1 hearings is not sufficient to support a reversal of our ruling on the present plan, which does not contain the changes agreed to by Debtor on this record and which could alter the company's ownership, change the amount of cash to be paid under the plan, add a requirement that stock be issued pursuant to the plan, require a change in management salaries to improve cash flow, require changes to the financial projections based upon uncollectibility of certain receivables, et cetera.

If Debtor wishes to propose an amended plan based on the evidentiary hearing, it must file an amended disclosure statement and plan.

An appropriate order will be entered.

### ORDER

And now, to-wit, this **17th day of August, 1994,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED** that the motion for reconsideration filed on behalf of Debtor and Marriner and Crumrine is **DENIED.**

It is **FURTHER ORDERED** that Debtor, any party in interest, or any creditor may file a plan and disclosure statement not later than **August 31, 1994,** with a notice to all creditors and Debtor that objections to the Disclosure Statement are due by **September 15, 1994,** and a hearing will be held on the Disclosure Statement on **September 29, 1994,** at **2:00 p.m.** in Courtroom 1112 of the William S. Moorhead Federal Building, 1000 Liberty Avenue, Pittsburgh, Pennsylvania, 15222. If no Disclosure Statement or Plan is filed by **August 31, 1994,** this case will be converted without further hearing or notice on **September 2, 1994.**

---

5. There is a dispute between Debtor and PIDA/MIDA as to whether Debtor can enter into the lease absent the lessor/mortgagee's consent. However, that issue has not yet come before the court because Debtor has not yet sought court approval to enter into the lease.